## TESTAMENTARY CAPACITY AS AFFECTED BY INTEMPERANCE.

Circuit Court of Cuyahoga County.

KATE FAGAN ET AL V. BRIDGET WELSH ET AL.

Decided, January 25, 1909.

*Will Contest—Presumption from Guardianship for · Intemperance— Relation of Ward to Person with Whom She Boards.*

1. Guardianship on the ground of intemperance does not raise the same presumption of testamentary incapacity as would be the case if the guardianship rested upon the ground of insanity or imbecility.

2. The relation of a ward under guardianship for intemperance, to a person with whom she boards under an arrangement made by the guardian for her, though such person has received certain instructions from the guardian as to the care of the ward, is not the same as the relation of the ward to the guardian, and does not, of itself, raise a presumption of undue influence in an action to set aside a will under which such person is a beneficiary.

*A. A. & A. H. Bemis,* for plaintiff in error.
*P. H. Kaiser* and *Foran, Pearson & Powell,* contra.

METCALFE, J. (of the Seventh Circuit, sitting in place of MARVIN, J.); WINCH, J., and HENRY, J., concur.

This action was brought by Kate Fagan, plaintiff herein, in the court below, to contest the will of Coena Murphy.

The errors complained of all relate to requests for instructions to the jury, and the general charge of the court. The question of the weight of the evidence is not raised, and the whole evidence does not appear in the record. There was a verdict and judgment in the lower court sustaining the will and this action is to reverse that judgment.

The facts, so far as they are necessary to an understanding of the questions raised, are as follows:

Coena Murphy was an orphan girl of about the age of 20 years at the time of the execution of this will. She was possessed of some property, consisting mostly of real estate in the city of

Cleveland.   Some time in 1905, Mr. Wm. T. Clark was by the probate court of this county appointed guardian of her person and property, under favor of Section 6317, on the ground that she was incapable of taking proper care of herself or her property by reason of intemperance.   It appears also that before this appointment an application was made for the appointment of a guardian on the ground of mental incapacity, which failed or was withdrawn, as appears.   In accordance with some understanding between the parties, Mr. Clark, upon his appointment as guardian, made an arrangement with the defendant, Bridget Welsh, to board and care for his ward, and from that time until her death, which occurred in June, 1905, Coena Murphy continued to reside with Mrs. Welsh.   The will in question was made by someone in Mr. Clark's office, a few weeks before Coena's death, and gave all her property to Mrs. Welsh.   At the time Mr. Clark made his arrangements with Mrs. Welsh to take care of Coena, he gave her some general directions about the way she was to be taken care of.

There is no evidence in the record tending to show undue influence or mental incapacity, and the only questions raised in the case come from the refusal of the court to give certain requests to charge, made by plaintiff in error; the giving of certain requests made by the defendants, and alleged error in the general charge.

The fifth and sixth requests to charge before argument, raise this question.: Did Mrs. Welsh stand in the same relation to Coena Murphy as her guardian to such an extent that the mere fact that Coena made her will in Mrs. Welsh's favor raised a presumption that the will was procured by undue influence. And, if so, was the burden of the proof thereby thrown upon the proponents of the will to disprove undue influence on the part of Mrs. Welsh?

We are unable to see how the mere fact that Mrs. Welsh was employed and paid by Coena's guardian to board and care for her could place her in the same fiduciary capacity as the guardian himself.   It is true that Mrs. Welsh took Coena into her house, probably treated her as a member of her family; 'per-

haps was a mother to her. This family relation would undoubtedly be one of trust and confidence between Mrs. Welsh and Coena, which if there were any evidence tending in any way to show had been used by Mrs. Welsh to induce the making of the will, would undoubtedly raise a suspicion of unfairness and perhaps a presumption which it would be necessary to rebut.

This would be more particularly so if there were evidence tending to show mental weakness on the part of Coena. We do not think, however, that we are required to entertain a presumption of mental weakness on account of the guardianship alone. The guardian was appointed solely on the ground of Coena's habits of intoxication and might be entirely consistent with the possession of testamentary capacity or even of extraordinary mental endowments. While the fact of the guardianship on the ground of intemperate habits would be evidence for the jury to consider as bearing on her mental condition, yet we do not think that the fact of the guardianship on this ground would raise the same presumption of testamentary incapacity as would have been the case had the guardianship rested upon the ground of insanity or imbecility, or any other form of mental weakness or disease.

There may have been evidence of mental weakness given at the trial, but that we know nothing about. We are deciding the question before us purely on the presumptions sought to be raised by the appointment of the guardian and the employment by him of Mrs. Welsh to take care of his ward and the relations of friendship and intimacy thus established. We do not think that the mere fact of employment of Mrs. Welsh and the friendly relations thus established, is sufficient of itself to raise a presumption of undue influence on the part of Mrs. Welsh, at least not without some evidence tending to show that such friendly relations were abused, or exerted in some way to influence the making of the will. We do not think that Mrs. Welsh stood in the shoes of the guardian in this respect.

Supposing, however, that we are wrong in this conclusion, and that a presumption of undue influence is raised against Mrs. Welsh by the fact of her relationship to Coena Murphy. What

is the degree of proof required to rebut the presumption? The issue in a will contest is simplified by statute to the single question: Is the paper in question the last will and testament of the testator? The party sustaining the will has the right to open and close the evidence and the argument. He must offer the will and order of probate thereof and rest his case. The order of probate is *prima facie* evidence of the due attestation, execution and validity of the will. By these provisions of the statutes, which I have thus summarized, it is sure that the only burden resting on the party sustaining the will is to offer certain evidence which the law requires to make a *prima facie* case sustaining the will. The burden then rests on the contestants to prove something necessary to render the will invalid. Are the contestants relieved of this burden at any stage of the trial?

We think not. While it may happen that in the course of the trial some issue may arise, the burden of which would rest upon the party sustaining the will, the general burden of proof, as to those things which render the will invalid, does not change. The degree of proof required to rebut a presumption is not a preponderance of the evidence, but evidence equal in countervailing weight to the effect of the presumption. In *Klunk* v. *Railway,* 74 O. S., 125, the action was by a locomotive engineer to recover for injuries sustained by the breaking of a water guage, the breaking of which raised a *prima facie* presumption of negligence. In the second proposition of the syllabus it is said:

"Proof of facts sufficient under the statute to create a *prima facie* presumption of negligence against the defendant cast upon it the burden of producing evidence of equal weight or countervailing force, in order to control or destroy the presumption, yet proof of such facts does not impose upon the defendant the burden of establishing affirmatively by a preponderance of the evidence, that it was not negligent." *Hutson* v. *Hartley,* 72 O. S., 262.

We think these cases settle the question that the burden of proof in a will contest does not shift as to any question at issue necessary to establish the invalidity of the will. The contestants in the fifth proposition to charge before argument, asked

the court to say that the same fiduciary relation existed between the girl and Mrs. Welch as existed between her and her principal guardian, and this relation raises a presumption of undue influence and casts upon the proponents of the will the duty of showing by a clear preponderance of the evidence that there was not such undue influence, but that everything connected with the making and execution of the instrument was free from impropriety and unfairness.

We think the court was right in refusing to so charge. And proposition six was equally vicious.

Proposition four might possibly have been given to the jury without prejudice. It is, however objectionable in that it assumes the existence of other evidence of mental incapacity and the probable existence of undue influence, and gives undue prominence to both these questions. Hence, there was no error in refusing to give it.

We think that the proposition submitted by the defendant were all applicable to the issues in the case, and were properly given.

Proposition one, made after argument, relates to the effect of the order of probate appointing a guardian for Coena Murphy, and the *prima facie* presumption of testamentary incapacity thereby raised. Conceding that the appointment of the guardian did raise this *prima facie* presumption, we think the request was faulty in confining the evidence to rebut the presumption too exclusively to the 2d day of June, the date of the execution of the will. In this it might have been misleading. It was the duty of the jury to look to all the evidence on the question of mental capacity, and then say whether or not at the time the will was made, she was of sound mind, etc. The jury might have understood from his request that they were confined to evidence relating only to the 2d day of June. So we think there was no error in refusing the request.

Request No. 2, after argument, is disposed of by our holding as to the numbers five and six, before argument.

In regard to the general charge; the court, after properly defining the amount of capacity and the understanding which

he must have of the extent of his property, his relation to the objects of his bounty, the effect of his will and the strength of mind necessary to perceive their obvious relations to each other, etc., used this language:

"Though he may not be able to understand and appreciate these matters in all their bearing as a person in sound and vigorous health of mind and body would do."

This language is excepted to. The qualifying words "sound and vigorous" relate to the health of the mind. The mind may be enfeebled by age or sickness, indeed, if our learned physiologists are right, very few do possess perfectly sound and vigorous health of mind and body. And yet there may be testamentary capacity, and we think that the use of the phrase in question is entirely consistent with the rest of the charge on that question, and there was no error in its use.

The following language also is excepted to: "The law gave to Coena Murphy the right to dispose of her property by last will and testament, lawfully executed, in any way she saw fit." And in this connection also the court said: "You are not at liberty to make a will for her. That was her right. You are simply to decide whether the one she has made was sanctioned by and fulfilled the requirements of the law." Perhaps this language might be criticised in the way it is expressed, but it states the law correctly. Coena Murphy, if of sound mind, had a right to make a will. The question of soundness of mind was for the jury, and in view of the instructions on that point, we do not see how they could have been misled by the language used. It was perfectly proper for the court to impress upon the jury that they were not to be governed by their own ideas of what Coena ought to have done, but decide whether the requirements of the law had been fulfilled.

Referring to the paper in controversy as "the will" or "the will she has made" in that connection would not be calculated to mislead.

The part of the charge excepted to, relating to influence obtained over a testator by kindness, affection, friendly attention, etc., is conceded to be a perfectly correct statement of the law,

and we see no reason why it should not have been given in this charge. The charge also is correct on the burden of proof. In summing up the court said:

"If the contestants have proved by a preponderance of the evidence any one of these things as to which the burden of proof was on them, then you should return a verdict finding the paper produced not to be the last will and testament of the deceased, but if they have failed to prove any one of them to your satisfaction, by a preponderance of the evidence, you should in that case return a verdict sustaining the will."

The expression "failed to prove any of them" would seem at first blush to have required the contestants to prove all of the claims made to invalidate the will. It is evident, however, that this is not what the court meant. The jury are told that if the contestants have proved any one of the things, the burden of which rested on them, they were entitled to a verdict setting the will aside, so that they could not without superhuman dullness have understood the subsequent expression used in that very connection, "failed to prove any one of them" to have meant that the contestants must prove all the claims.

The judgment of the court of common pleas is affirmed.